No. 23-3596

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Metron Nutraceuticals, LLC
*Plaintiff-Appellant*

v.

Christina Rahm Cook, *et al*.
*Defendants-Appellees*

On Appeal from the United States District Court
for the Northern District of Ohio, No. 2:20-cv-01803

## BRIEF OF APPELLANT METRON NUTRACEUTICALS, LLC

Daniel A. Leister (0089612)
Lewis Brisbois Bisgaard & Smith
1375 East 9th St., Suite 2250
Cleveland, Ohio
(216) 586-8803
Dan.Leister@lewisbrisbois.com
*Counsel for Plaintiff-Appellant*
*Metron Nutraceuticals, LLC*

i

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ iii

**STATEMENT IN SUPPORT OF ORAL ARGUMENT** ................................. xi

**STATEMENT OF JURISDICTION** ...................................................... 1

**STATEMENT OF ISSUES** ...................................................................... 2

**STATEMENT OF THE CASE** ............................................................... 3

    **A.**   **Factual Background** ................................................................ 3

    **B.**   **Procedural History** ................................................................ 7

**SUMMARY OF THE ARGUMENT** ..................................................... 10

**ARGUMENT** ....................................................................................... 13

    **A.**   **The Court Erred When It Granted Defendants' Motion for Summary Judgment.** ......................................................... 13

        1.    Standard of Review ........................................................ 13

        2.    OUTSA Does Not Preempt Metron's Breach of Contract Claims. ......................................................................... 14

        3.    Genuine Issues of Fact Exists as to the Existence of a Trade Secret. .......................................................................... 22

        4.    Metron's Misappropriation Claim is Not Time-Barred. ........... 28

    **B.**   **The District Court Demonstrated Hostility Toward Metron.** ...... 39

**CONCLUSION** .................................................................................... 47

**CERTIFICATE OF COMPLIANCE** ..................................................... 48

**CERTIFICATE OF SERVICE** .............................................................. 49

**ADDENDUM** ...................................................................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abaco Drilling Techs. v. Pv Fluid Prods.*,
  2020 U.S. Dist. LEXIS 259199 (W.D. Tex. 2020)................................34, 35, 39

*Adcor Indus. v. Bevcorp, LLC*,
  252 Fed. Appx. 55 (6th Cir. 2007).........................................................29, 30, 33

*Airfacts, Inc. v. de Amezaga*,
  502 F. Supp. 3d 1027 (D. Md. 2020)....................................................................20

*All W. Pet Supply Co. v. Hill's Pet Prods. Div.*,
  847 F. Supp. 858 (D. Kan. 1994)..........................................................................20

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*,
  649 F. Supp. 2d 702 (N.D. Ohio 2009) ...............................................................17

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*,
  805 F.3d 701 (6th Cir. 2015) ...............................................................................14

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
  390 F. Supp. 2d 1170 (M. D. Fla. 2005)..............................................................20

*Anderson v. Sheppard*,
  856 F.2d 741 (6th Cir. 1988) ...............................................................................45

*Angelica Textile Services, Inc. v. Park*,
  220 Cal. App. 4th 495 (2013) ..............................................................................20

*Aon Risk Servs. v. Liebenstein*,
  289 Wis. 2d 127, 710 N.W.2d 175 (Wisc. App. 2006) .......................................21

*Appalachian Railcar Servs. v. Boatright Enters.*,
  602 F. Supp. 2d 829 (W.D. Mich. 2008).............................................................20

*Applied Predictive Techs., Inc. v. Marketdial, Inc.*,
  598 F. Supp. 3d 1264 (D. Utah 2022)..................................................................17

*Atlas CPAs & Advisors PLLC v. Hayward & Assocs.*,
   2021 Colo. Dist. LEXIS 1239 (Dist. Col., Feb. 9, 2021) ...................................20

*AutoMed Techs., Inc. v. Eller*,
   160 F. Supp. 2d 915 (N.D. Ill. 2001)...................................................................20

*Babcock Power, Inc. v. Kapsalis*,
   2017 U.S. Dist. LEXIS 47315 (W.D. Ky. 2017)..................................................20

*Barrio Bros., LLC v. Revolucion, LLC*,
   2019 U.S. Dist. LEXIS 179092 (N.D. Ohio 2019)...............................................30

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
   123 Haw. 314, 235 P.3d 310 (Haw. 2010) .........................................................20

*Bonumose Biochem, LLC v. Yi-Heng Percival Zhang*,
   2018 U.S. Dist. LEXIS 84491 (W.D. Va. 2018) .................................................26

*CAE Integrated, LLC v. Moov Techs. Inc.*,
   2022 U.S. Dist. LEXIS 173598 (W.D. Tex. 2022)...............................................21

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
   2018 U.S. Dist. LEXIS 167813 (W.D. Ky. 2018).........................................25, 26

*Coihue v. Payanybiz*,
   2018 U.S. Dist. LEXIS 235599 (S.D. Fla. 2018) ...............................................20

*CommonSpirit Health v. HealthTrust Purchasing Grp., L.P.*,
   2022 U.S. Dist. LEXIS 81688 (M.D. Tenn. 2022)...............................................21

*Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*,
   2006 U.S. Dist. LEXIS 394 (S.D. Ohio 2006) ..............................................24, 28

*D.P. Dough Franchising, LLC v. Southworth*,
   2017 U.S. Dist. LEXIS 157951 (S.D. Ohio 2017) ..............................................17

*DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*,
   233 F. Supp. 2d 934 (S.D. Ohio 2002) ........................................................24, 28

*DeGidio v. West Group Corp.*,
   355 F.3d 506 (6th Cir. 2004) .........................................................................13, 27

iv

*Diamond Power Int'l, Inc. v. Davidson*,
 540 F. Supp. 2d 1322 (N.D. Ga. 2007).................................................20

*Dick v. Hyer*,
 94 Ohio St. 351, 114 N.E. 251 (1916) ..................................................38

*Ecolab, Inc. v. Glanz*,
 2023 U.S. Dist. LEXIS 52997 (S.D. Ohio 2023) .................................17

*ExactLogix, Inc. v. JobProgress, LLC*,
 508 F. Supp. 3d 254 (N.D. Ill. 2020).....................................................20

*Glasstech, Inc. v. TGL Tempering Sys., Inc.*,
 50 F. Supp. 2d 722 (N.D. Ohio 1999) ...................................................17

*Hambleton v. R.G. Barry Corp.*,
 12 Ohio St. 3d 179 (1984) ..............................................................30, 33

*Harvey Barnett, Inc. v. Shidler*,
 200 Fed. Appx. 734 (10th Cir. 2006).....................................................19

*Hecny Transp., Inc. v. Chu*,
 430 F.3d 402 (7th Cir. 2005) .................................................................19

*Holmes v. Crawford Mach., Inc.*,
 134 Ohio St. 3d 303, 2012-Ohio-5380, 982 N.E.2d 643 ...............22, 23

*ImageTrend, Inc. v. Locality Media, Inc.*,
 2022 U.S. Dist. LEXIS 211741 (D. Minn. 2022)..................................20

*Integral Dev. Corp. v. Tolat*,
 675 Fed. Appx. 700 (9th Cir. 2017).......................................................19

*Johnson v. Howard*,
 24 Fed. Appx. 480 (6th Cir. 2001).........................................................45

*Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*,
 2010 U.S. Dist. LEXIS 103021 (S.D. Ohio 2010) ................................16

*Key Realty, Ltd. v. Hall*,
 6th Dist. No. L-19-1237, 2021-Ohio-26.............................................16, 21

v

*Kleiman v. Wright*,
   2020 U.S. Dist. LEXIS 171906 (S. D. Fla. 2020) ...............................................20

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
   654 F.3d 1179 (11th Cir. 2011) .............................................................31, 32, 33

*LeGgett v. Bed*,
   2020 U.S. Dist. LEXIS 267648 (W.D. Mo. 2020) ..............................................20

*Lillard v. Shelby County Bd. of Educ.*,
   76 F.3d 716 (6th Cir. 1996) ................................................................................13

*LocalAdLink, Inc. v. AdzZoo, LLC*,
   2009 U.S. Dist. LEXIS 142286 (D. Nev. 2009)...................................................20

*McConnell v. Dudley*,
   158 Ohio St. 3d 388, 2019-Ohio-4740, 144 N.E.3d 369....................................22

*MEMC Elec. Materials, Inc. v. Balakrishnan*,
   2012 U.S. Dist. LEXIS 128877 (S.D. Ohio 2012) ..............................................17

*Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*,
   852 F. Supp. 2d 925 (S.D. Ohio 2012) ...............................................................17

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
   472 F.3d 398 (6th Cir. 2006) ........................................................................25, 26

*More Than Gourmet, Inc. v. Finnegan*,
   2019 U.S. Dist. LEXIS 243261 (N.D. Ohio 2019)...............................................17

*New Phase Dev., LLC v. Cook*,
   2015 U.S. Dist. LEXIS 98461 (D. Idaho 2015) ..................................................20

*Nutzz.com v. Vertrue Inc.*,
   2005 Del. Ch. LEXIS 101 (Del. Ch. 2005) .........................................................20

*Office Depot, Inc. v. Impact Office Prods.*,
   LLC, 2011 U.S. Dist. LEXIS 117733 (N.D. Ohio, Oct. 11, 2011) ....................20

*Office Depot, Inc. v. Impact Office Prods.*,
   LLC, 821 F. Supp. 2d 912 ..................................................................................17

*Official Imaging, Inc. v. Langridge*,
   2018 U.S. Dist. LEXIS 226887 (C.D. Cal., Aug. 7, 2018) ...............................20

*Peralta v. Cal. Franchise Tax Bd*.,
   124 F. Supp. 3d 993 (N.D. Cal. Aug. 24, 2015) .................................................20

*Perry v. Allstate Indem. Co*.,
   953 F.3d 417 (6th Cir. 2020) .............................................................................21

*PF3 Global, LLC v. Forterra Pipe & Precast, LLC*,
   2019 U.S. Dist. LEXIS 241560 (S.D. Miss. 2019)..............................................20

*Professional Investigating & Consulting Agency v. SOS Sec., LLC*,
   2020 U.S. Dist. LEXIS 5919 (S.D. Ohio 2020) ..................................................16

*Progress Eng'g, LLC v. Bennett*,
   2022 U.S. Dist. LEXIS 200166 (D. Maine 2022) ...............................................20

*PSC Indus. v. Johnson*,
   2021 U.S. Dist. LEXIS 81350 (M.D. Tenn. 2021)...............................................21

*PT Pukuafu Indah v. United States SEC*,
   661 F.3d 914 (6th Cir. 2011) .............................................................................46

*Read & Lundy, Inc. v. Wash. Trust Co*.,
   2002 R.I. Super. LEXIS 181 ...............................................................................21

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ...........................13, 14

*Reo v. Lindstedt*,
   10th Dist. No. 2019-L-073, 2020-Ohio-6674....................................................29

*Rogers Indus. Prods. v. HF Rubber Mach. Inc*.,
   188 Ohio App. 3d 570, 2010-Ohio-3388 (9th Dist.) .........................................18

*Safelite Grp., Inc. v. Lockridge*,
   2023 U.S. Dist. LEXIS 37423 (S.D. Ohio 2023) ...............................................17

*Sal's Heating & Cooling, Inc. v. Bers Acquisition Co.*,
   2022-Ohio-1756, 192 N.E.3d 537 ................................................................17, 18

*Sanirab Corp. v. Sunroc Corp.*,
    2002 Del. Super. LEXIS 350 ..................................................................20

*Schwieterman v. Caterpillar Inc.*,
    2021 U.S. Dist. LEXIS 135003 (N.D. Ga. 2021) ...............................20

*Shepard & Assocs. v. Lokring Tech., LLC*,
    2022 U.S. Dist. LEXIS 117268 (N.D. Ohio 2022)............................17

*Skylar Haley LP v. Meduri Farms, Inc.*,
    2010 U.S. Dist. LEXIS 103333 (D. Or. 2010) ..................................21

*Smith v. J.J.B. Hilliard, W.L. Lyons, LLC*,
    578 Fed. Appx. 556 (6th Cir. 2014).....................................................29

*Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.*,
    15 F.3d 1427 (7th Cir. 1994) ...............................................................31

*Spectralytics, Inc. v. Cordis Corp.*,
    576 F. Supp. 2d 1030 (D. Minn. 2008)..........................................37, 38

*Stolle Mach. Co., LLC v. Ram Precision Indus.*,
    605 Fed. Appx. 473 (6th Cir. 2015).....................................................18

*Stonyfield Farm, Inc. v. Agro-Farma, Inc.*,
    2009 U.S. Dist. LEXIS 94217 (D. N.H. 2009)...................................21

*T.D.I. Int'l, Inc. v. Golf Preservations, Inc.*,
    2008 U.S. Dist. LEXIS 7427 (E.D. Ky. 2008) ...................................20

*Tomaydo-Tomahhdo L.L.C. v. Vozary*,
    2017-Ohio-4292, 82 N.E.3d 1180 (8th Dist.)...............................16, 21

*Unique Paving Materials Corp. v. Fargnoli*,
    361 Fed. Appx. 689 (6th Cir. 2010)....................................................17

*United Magazine Co. v. Murdoch Magazines Distrib.*,
    146 F. Supp. 2d 385 (S.D. N.Y. 2001) ...............................................16

*United States v. Smith*,
    706 Fed. Appx. 241 (6th Cir. 2017)....................................................45

*Vention Med. Advanced Components, Inc. v. Pappas*,
  2016 N.H. Super. LEXIS 13 (2016) ...................................................21

*W. L. Gore & Assocs. v. GI Dynamics, Inc.*,
  872 F. Supp. 2d 883 (D. Ariz. 2012) ..............................................20

*Wilcox Indus. Corp. v. Hansen*,
  870 F. Supp. 2d 296 (D. N.H. 2012)................................................21

*Windrock, Inc. v. Resonance Sys.*,
  2022 U.S. Dist. LEXIS 11395 (E.D. Tenn. 2022)...........................21

**Statutes**

A.R.S.§ 44-407.................................................................................19

6 Del. C. § 2007 ...............................................................................19

12 Pa.C.S. § 5308 .............................................................................19

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1332 ................................................................................1

Cal. Civ. Code § 3426.7 ...................................................................19

Colo Rev. Stat. § 7-74-108 ..............................................................19

Fla. Stat. §§ 688.008 ........................................................................19

Ill. Comp. Stat. § 1065/8 .................................................................19

Kan. Stat. § 60-3326 ........................................................................19

Ky. Rev. Stat. § 365.892 ..................................................................19

M.C.L. § 445.1908 ...........................................................................19

Md. Code., Com. Law. § 11-1207 ...................................................19

Minn. Stat. § 325C.07 ......................................................................19

Miss. Code § 75-26-15......................................................................19

Mo. Rev. Stat. § 417.463 ..................................................................19

ix

Mont. Code § 30-14-408 ........................................................................19

N.D. Cent. Code § 47-25.1-07 ...............................................................19

N.H. Rev. Stat. § 350-B:7 ......................................................................19

Nev. Rev. Stat. § 600A.090 ...................................................................19

Ohio Uniform Trade Secrets Act ....................................................passim

Or. Rev. Stat. § 646.473 .........................................................................19

R.I. Gen. Laws § 6-41-7 .........................................................................19

S.C. Code § 39-8-110 .............................................................................19

S.D. Codified Laws § 37-29-7 ...............................................................19

Tenn. Code § 47-25-1708 .......................................................................19

Tex. Civ. Prac. & Rem. Code § 134A.007 .............................................19

Uniform Trade Secrets Act ..............................................................passim

Utah Code § 13-24-8 ..............................................................................19

Va. Code § 59.1-341 ...............................................................................19

Vt. Stat. tit. 9, § 4607 ............................................................................19

W. Va. Code § 47-22-7 ...........................................................................19

Wis. Stat. § 134.90(6) ............................................................................19

**Other Authorities**

Ohio Civ. R. 11 ......................................................................................38

Fed. Civ. R. 11 .......................................................................................46

Fed. Civ. R. 37 .......................................................................................41

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure and the Sixth Circuit Local Rules, Plaintiff-Appellant Metron Nutraceuticals, LLC respectfully requests oral argument. This appeal raises important issues related to the interpretation and application of Ohio's Uniform Trade Secrets Act, and oral argument would likely help this Court further understand and raise any questions regarding the facts, legal issues, and arguments.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship following removal to the federal district court. (Notice of Removal, RE 1, Page ID # 1-5).

This Court has subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

On July 18, 2023, the district court issued an Opinion and Order granting Defendants' Motion for Summary Judgment (Opinion and Order, RE 171, Page ID # 7218-7270) and a Judgment Entry dismissing the case, which was a final appealable order that resolved all claims against all parties. (Judgment Entry, RE 172, Page ID # 7271).

On July 19, 2023, Plaintiff-Appellant Metron Nutraceuticals, LLC timely filed its Notice of Appeal. (Notice of Appeal, RE 173, Page ID # 7272-73).

## STATEMENT OF ISSUES

The ultimate issue is whether the district court erred in granting summary judgment in favor of Defendants—a determination that involves the following four issues, each of which this Court should answer in the affirmative:

1.   Did the district court err by concluding that the Ohio Uniform Trade Secret Act preempted Metron's breach of contract claims?

2.   Did the district court err by concluding, as a matter of law, that Metron's unpublished patent application contained no trade secrets?

3.   Did the district court err by concluding, as a matter of law, that Metron's trade secret misappropriation claims against Clayton Thomas and Christina Cook were time-barred?

4.   Should the district court's order granting summary be vacated based upon the district court's hostility toward Metron and its counsel?

## STATEMENT OF THE CASE

### A.    <u>Factual Background</u>

Metron Nutraceuticals, LLC ("***Metron***") is a research and development company based in Cleveland that formulates and manufacturers dietary supplements containing clinoptilolite, a natural occurring zeolite known for its detoxification capabilities.  Dr. Nikolaos Tsirikos-Karapanos is Metron's President.  (Deposition Tran., RE 156-1, Page ID # 4851).  He invented multiple patented processes and products based upon those processes involving breaking clinoptilolite into "fragments" to enhance its detoxification capabilities within the human body. Metron came up with the term "hydrolyzed clinoptilolite fragments" ("***HCF***") to refer to its technology.

On December 31, 2014, Metron filed a PCT Patent Application ("***Metron's Unpublished Application***")[1] that was a continuation of and claimed priority to Metron's previous provisional patent application filed on October 9, 2014.  (Patent Application, RE 154-16, Page ID # 3654-3676).[2]

The Statement of Facts section of Metron's Opposition to Defendants' Motion for Summary Judgment explains, in great detail, how Clayton Thomas (Metron's former co-owner and employee), Christina Cook (Mr. Thomas's partner), and Mark

---

[1] Metron's Unpublished Application was published on April 14, 2016.

[2] Metron's Unpublished Application resulted in an issued patent.  (Patent, RE 154-4, Page ID # 3511-3528).

Adams (Metron's former distributor) worked together—individually and through various shell companies—to wrongfully misappropriate Metron's trade secrets to directly compete with Metron. (Opposition to Motion for Summary Judgment, RE 168, Page ID # 7120-7154). With pressure from Mr. Adams and Mr. Thomas, Ms. Cook copy-and-pasted 72 distinct portions of Metron's Unpublished Application, which was unpublished at the time, in order to draft and file her own patent application (the "***Cook-EnTox Application***").[3]

This occurred on October 14, 2015 when Mr. Thomas, Ms. Cook, and Mr. Adams met at Mr. Adams's offices in Texas to "build a patent" (the "***Meeting***"). (Cook Dep., RE 156-2, Page ID # 5648; Adams Dep., RE 155-2, Page ID # 4181-82, 4241). Before the Meeting, Ms. Cook emailed Mr. Thomas and Mr. Adams saying, "we will do this the right way but quickly, so we win the race as a team." (Adams Dep., RE 155-2, Page ID # 4449). The "race" was a clear reference to Mr. Adams's objective to "bring a detox product to the market." (Adams Dep., RE 155-2, Page ID # 4232). Ms. Cook brought with her to the Meeting a "huge stack" of Metron documents, which Defendants' own expert testified likely contained Metron's Unpublished Application. (Cook Dep., RE 156-2, Page ID # 5654; L. Williams Dep., RE 160-1, Page ID # 6530). Mr. Adams pressured Ms. Cook to draft

---

[3] Redlined Patent Application, RE 156-2, Page ID # 5836-5893 (evidencing that the word "hydrolyzed" in the title was subsequently changed to "solvolyzed").

4

the Cook-EnTox Application, despite Ms. Cook sharing her "major concern" about using Metron's information to draft the Cook-EnTox Application. (Cook Dep., RE 156-2, Page ID # 5657-58, 5732). Ms. Cook, the identified "inventor" of the Cook-EnTox Application, testified she informed individuals at the Meeting, "I would like to understand more about this because I think there needs to be more detail. I'm not comfortable with it." (Cook Dep., RE 156-2, Page ID # 5663).

At the time of the Meeting, Mr. Thomas, Ms. Cook, and Mr. Adams were each subject to a Mutual Confidentiality Agreement with Metron ("**MCA**"). (MCAs, RE 3-1; Page ID # 166-68; RE 3-2, Page ID # 169-71; RE 3-3, Page ID # 172-74). The definition of "Confidential Information" under the MCAs, included, *inter alia*:

> …any information provided by Metron which references any Metron product and any Metron product related process including but not limited to process involving water-soluble hydrolyzed clinoptilolite fragments and any nutraceutical products based upon water-soluble hydrolyzed clinoptilolite fragments.[4]

"The Confidential Information may not be copied or reproduced without the disclosing party's prior written consent." (*Id.*, § 3).

M. Cook testified that, during the Meeting, she "absolutely" discussed that the patent she was drafting was based upon Metron documents. (Cook Dep., RE 156-2, Page ID # 5732). But according to Mr. Adams, he instructed Ms. Cook *not* to bring

---

[4] *Id.*, § 1.

5

information "from any other sources," "that wasn't in the public domain," or "wasn't original to her." (Adams Dep., RE 155-2, Page ID # 4237).

To "own" and prosecute the Cook-EnTox Application, Mr. Adams created EnTox Solutions, LLC ("*EnTox*"). (Adams Dep., RE 155-2, Page ID # 4177, 4194). Despite Mr. Adams agreeing that Metron would be his exclusive HCF supplier, Mr. Adams admitted the Cook-EnTox Application's purpose was to create "an alternative supply of Metron's HCF-C product." (Sozo EDA, RE 161-3, Page ID # 655-6679, § 17; Brief in Support of Motion for Summary Judgment, RE 159-1, Page ID # 6449).

Mr. Adams knew the Cook-EnTox Application copied Metron's information yet never withdrew the Cook-EnTox Application and, in fact, prosecuted it, over the course of six years, until it became an issued patent (the "*EnTox Patent*"). (Patent, RE 154-16, Page ID # 3686-3697). While Metron incurred legal fees challenging the Cook-EnTox Application and subsequently the EnTox Patent, Ms. Cook, Mr. Thomas, and their company Root Wellness, LLC ("*ROOT*") used the Cook-EnTox Application and the EnTox Patent to promote their product CleanSlate, and its predecessor Vitality Detox Drops, which were advertised as "patent-pending" and then "patented." (Thomas Dep., RE 155-3, Page ID # 4508, 4527, 4653, 4692; Affidavit, RE 166-1, Page ID # 7067). Vitality Detox Drops and CleanSlate directly compete with Metron's products. (Affidavit, RE 166-1, Page ID # 7067-69).

6

### B.   Procedural History

On July 13, 2020, Metron filed suit in state court against Christina Rahm Cook, Clayton Thomas, ROOT, and other entities related to Ms. Cook and/or Mr. Thomas.  (Complaint, RE 1-1, Page ID # 11-53).

On August 14, 2020, Defendants removed to federal court based upon diversity of citizenship.  (Notice of Removal, RE 1, Page ID # 1-5).

On August 17, 2020, Metron filed its Amended Complaint joining as defendants Mark Adams and his companies EnTox and Top Partners Management, LLC (EnTox's managing member).  (Am. Complaint, RE 3, Page ID # 92-165). Metron brought the following claims:

- Count I:   Misappropriation and Improper Means, Ohio's Uniform Trade Secrets Act (All Defendants)
- Count II:   Mandatory Injunction, OUTSA (All Defendants)
- Count III:  Breach of Contract (Thomas, Cook, Adams, and EnTox)
- Count IV:  Tortious Interference (Thomas, Cook, and Adams)
- Count V:   Fraudulent Misrepresentation (Adams)
- Count VI:  Piercing the Corporate Veil (Thomas, Cook, and Adams)
- Count VII: Preliminary Injunction

Metron filed a notice identifying 72 examples of the Cook-EnTox Application verbatim copying from Metron's Unpublished Application ("***Metron's Notice***"). (Notice, RE 96, Page ID # 2833-2852).[5]   The Cook-EnTox Application copied

---

[5] To fully appreciate the extent of the copy-and-pasting as well as the detailed scientific, manufacturing processes involved, Metron invites and encourages this Court to review Metron's Notice and the 72 enumerated examples.

Metron's molecular formulas,[6] siphoning and filtration processes,[7] pH ranges,[8] liquid layer volumes,[9] evaporation processes,[10] heating temperatures,[11] thermal duration,[12] thermal changes,[13] mixture agitation methods,[14] LC-MS testing methods and equipment,[15] mobile phase dilution using formic acid,[16] formulations,[17] quantities of zeolites,[18] quantities of phosphoric acid,[19] quantities of UV treated R/O water,[20] and the qualitative characteristics of the hydrolysis reaction (including acceptance criteria for volume, pH, and solids).[21]

Metron's expert, Dr. Fernando Alberdi, opined, "the extent of verbatim reproduction of Metron's PCT application in the [Cook-EnTox Application] indicates that such copying resulted in misappropriation of Metron's trade secret information for the purpose of complying with the requirements for obtaining a

---

[6] RE 96, Page ID # 2838, Misappropriation 21.
[7] *Id.*, Page ID # 2841-42, Misappropriations 32, 39.
[8] *Id.*, Page ID # 2841-46, Misappropriations 34, 40-41, 46, 49-50.
[9] *Id.*
[10] *Id.*
[11] *Id.*, Page ID # 2849-51, Misappropriations 57, 61, 62, 63, 64.
[12] *Id.*
[13] *Id.*, Page ID # 2849, Misappropriation 57.
[14] *Id.*, Page ID # 2842, Misappropriation 36.
[15] *Id.*, Page ID # 2843-44, 50, Misappropriations 42, 50.
[16] *Id.*, Page ID # 2844, Misappropriation 43.
[17] *Id.*, Page ID # 2848, Misappropriation 53.
[18] *Id.*, Page ID # 2950, Misappropriation 59.
[19] *Id.*, Page ID # 2849, Misappropriation 57.
[20] *Id.*
[21] *Id.*, Page ID # 2850, 52, Misappropriations 58, 68, 71.

patent in the USPTO." (Alberdi Report, RE 154-3, Page ID # 3497) (emphasis added). Defendants' own expert, Larry Williams, could not deny that there was "significant overlap" between Metron's Unpublished Application and the Cook-EnTox Patent. (L. Williams Dep., RE 160-1, Page ID # 6528).

On October 17, 2022, Defendants filed a Motion for Summary Judgment seeking dismissal of all claims. (Motion for Summary Judgment, RE 159, Page ID # 6428). Metron timely filed its opposition on November 16, 2022, in which Metron agreed to an entry of dismissal on certain claims and certain parties. (Opposition, RE 168, Page ID # 7113-7181). Metron argued that genuine issues of fact existed as to Metron's breach of contract claims and trade secret misappropriation claims. (*See id.*).

Eight months later,[22] on July 18, 2023, without oral argument, the district court granted Defendants' Motion for Summary Judgment (Opinion and Order, RE 171, Page ID # 7218-7270) and entered a Judgment Entry dismissing the case, which was a final appealable order that resolved all claims against all parties. (Judgment Entry, RE 172, Page ID # 7271).

Metron filed a Notice of Appeal the next day on July 19, 2023. (Notice of Appeal, RE 1, Page ID ## 1-5).

---

[22] Loc. R. 7.3 provides, "The Judicial Officer shall make every effort…to rule on any dispositive motion within (60) days of the time the motion comes at issue or the briefing is concluded…"

## SUMMARY OF THE ARGUMENT

The district court made unprecedented legal conclusions that defy the overwhelming consensus reached by courts across this country.  The district court drew unreasonable inferences *against* Metron (the non-moving party), disregarded supportive expert testimony, and ignored the abundance of genuine issues of fact that support Metron's claims.  Furthermore and without legitimate basis, in its order dismissing Metron's claims, the district court gratuitously engaged in a surprising, emotionally charged, and hostile attack on the integrity of Metron and its counsel.  The judgment should be reversed.

The district court erred when it granted Defendants' Motion for Summary Judgment; dismissed Metron's claim for breach of contract against Clayton Thomas, Christina Rahm Cook, and Mark Adams; and dismissed Metron's claims under Ohio's Uniform Trade Secrets Act against Mr. Thomas, Ms. Cook, Mr. Adams, EnTox, Top Partners, and ROOT.

*First*, Ohio's Uniform Trade Secrets Act ("**OUTSA**") does not preempt Metron's breach of contract claims.  Breach of contract claims are expressly and unambiguously exempted from OUTSA preemption.  *See* O.R.C. § 1333.67(B)(1).  The district court's ruling that OUTSA preempted Metron's breach of contract claims contradicts the plain reading of the statute, violates the Ohio Supreme Court's rules on interpreting statutes, and defies the national consensus reached on this issue.

*Second*, the manufacturing practices, protocols, measurements, and scientific data contained in Metron's Unpublished Application, from which Defendants verbatim copied 72 portions, constitute trade secrets. Without Defendants copying from Metron's Unpublished Application, the Cook-EnTox Application and subsequent EnTox Patent would not exist. The existence of other "clinoptilolite suspension" products, made by other companies using unknown methods, does not transform Metron's information into *non* trade secrets. The district court improperly drew inferences against Metron instead of recognizing the genuine issues of fact that should have prevented granting summary judgment on the trade secret issue.

*Third*, Metron's trade secret misappropriation claims are not time-barred. The misappropriation occurred on October 14, 2015 when the Defendants surreptitiously met at Mr. Adams's office and used Metron's information and documents to create and file the Cook-EnTox Application. Metron was unaware of this meeting or the Cook-EnTox Application. Nothing in the record shows what type of investigation was available to Metron that could have, let alone *would* have, revealed to Metron this October 14, 2015 meeting or the existence of the Cook-EnTox Application. Mr. Adams misled Metron by saying Mr. Thomas and Ms. Cook were "common enemies"—while withholding from Metron his prior cooperation with Mr. Thomas and Ms. Cook. The earliest date Metron could have learned about the October 14, 2015 meeting, assuming Metron was obsessively checking the USPTO database,

11

was April 20, 2017: the day the Cook-EnTox Application published.  Metron filed this lawsuit on July 13, 2020—well within four years of April 20, 2017.  At the very least, genuine issues of fact exist as to whether Metron, through a reasonable investigation, could have discovered the October 14, 2015 meeting or the Cook-EnTox Application before July 13, 2016 (four years before Metron filed this lawsuit).

*Finally*, the district court displayed hostility toward Metron and Metron's counsel.  In its orders, the district court has said:

> It was "deeply troubled by the conduct of…Metron Nutraceuticals and its counsel"[23]

> "[T]he record demonstrates [Metron's] willingness to use and abuse the legal system."[24]

> Metron is "litigious."[25]

> "Plaintiff's counsel has abandoned reason and a constructive approach to resolving any good-faith disputes over the merits in favor of litigation tactics that claw and scrape for an advantage, regardless of the cost."[26]

These opinions are unfounded, uncalled for, and completely irrelevant to the pending legal issues.  As examples of this purported "abuse," the district court cited merely two lawsuits Metron filed years ago in state court in 2016.  (Opinion and

---

[23] RE 146, Page ID # 3467.
[24] RE 171, Page ID # 2763, citing RE 99, 101, 141, 155-2, 157-5 ¶¶ 1-107.
[25] RE 171, Page ID # 2763
[26] RE 146, Page ID # 3459-60.

Order, RE 158, Page ID # 7263). The district court did not preside over these cases and, at best, had only cursory knowledge of their facts and merits. Metron prevailed in both of lawsuits, but the district court used them as evidence that Metron "abuse[s] the legal system." The district court also identified three of Metron's filings in this case (one of which was *granted*) that were well-researched, fully supported with exhibits, and sought to uphold the district court's *own* orders. The district court may have disagreed with Metron's arguments, but saying Metron's filings were an "abuse of the legal system" was beyond the pale.

## ARGUMENT

### A. <u>The Court Erred When It Granted Defendants' Motion for Summary Judgment</u>.

#### 1. Standard of Review

A grant of summary judgment is reviewed *de novo*. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996). In deciding a summary judgment motion, courts cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter asserted. *DeGidio v. West Group Corp.*, 355 F.3d 506, 509 (6th Cir. 2004), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *accord Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). "We view the evidence and draw all justifiable inferences in the light most favorable to the non-movant." *Id*. "Summary judgment is appropriate where there is no genuine

issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.*, *citing* Fed. R. Civ. P. 56(c).

### 2. OUTSA Does Not Preempt Metron's Breach of Contract Claims.

#### (a) Uniform Trade Secrets Act

In 1985, the National Conference of Commissioners on Uniform State Laws released the Uniform Trade Secrets Act ("*UTSA*") and recommended its adoption by all 50 states. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 805 F.3d 701, 703 (6th Cir. 2015). The goal was uniformity.[27] UTSA contains a section titled "Effect on Other Law" (commonly referred to as the "displacement" or "preemption" clause), which provides:

> (a) Except as provided in subsection (b), this [Act] displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.[28]

Three categories are exempt from preemption:

> (b) This [Act] does not affect:
>
>> (1) contractual remedies, whether or not based upon misappropriation of a trade secret; or
>>
>> (2) other civil remedies that are not based upon misappropriation of a trade secret; or

---

[27] "This act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it." UTSA §8 – Uniformity of Application and Construction.

[28] UTSA §7 – Effect on Other Law.

     (3) criminal remedies, whether or not based upon misappropriation of a trade secret.[29]

Per the plain text, UTSA does not affect contractual remedies—regardless of whether the breach of contract claim giving rise to said contractual remedies is based upon trade secret misappropriation.

Ohio adopted UTSA with minor changes—codified as the Ohio Uniform Trade Secret Act ("*OUTSA*"). Ohio's General Assembly expressed its intent to participate in the uniform application of laws that UTSA provides. *See* O.R.C. § 1333.68 (OUTSA "shall be applied and construed to…make uniform the law with respect to their subject among states enacting them.").

### (b)    OUTSA's Displacement Clause Exempts Breach of Contract Claims.

OUTSA's displacement clause mirrors UTSA's displacement clause and contains the same contractual exemption:

> **Contractual remedies**, *whether or not based on misappropriation of a trade secret*;[30]

Cases involving a pending breach of contract claim, that analyze or apply O.R.C. § 1333.67, generally fall into one of two categories. Either (1) the court expressly stated that OUTSA does not preempt breach of contract claims or (2) the court excluded pending breach of contract claims from its preemption analysis. *E.g.,*

---

[29] *Id.*
[30] O.R.C. § 1333.67 (emphasis added).

15

*Tomaydo-Tomahhdo L.L.C. v. Vozary*, 2017-Ohio-4292, ¶ 34, 82 N.E.3d 1180, 1189 (8th Dist.) ("…preemption of the trade secrets act <u>does not apply to contract claims</u>") (emphasis added); *accord Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, 2010 U.S. Dist. LEXIS 103021, *16-17 (S.D. Ohio 2010) ("<u>[I]f Count IV establishes a contract claim, it is not displaced by § 1333.67</u>") (emphasis added); *accord United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 410 (S.D. N.Y. 2001) ("Because plaintiffs' unfair competition claim…sounds in tort, <u>rather than contract</u>, under § 1333.67[,] it is preempted…") (emphasis added); *accord Key Realty, Ltd. v. Hall*, 6th Dist. No. L-19-1237, 2021-Ohio-26, ¶ 26 ("…<u>breach of contract claim is not precluded</u> by its misappropriation of trade secrets claim") (emphasis added).

Given that OUTSA, by its plain text, does *not* preempt contract claims, courts and litigants are correct when they exclude pending breach of contract claims from their arguments and discussions about OUTSA preemption. *E.g., Professional Investigating & Consulting Agency v. SOS Sec., LLC*, 2020 U.S. Dist. LEXIS 5919, *6, (S.D. Ohio 2020) ("Defendants argue that all of Plaintiff's claims, <u>other than its breach-of-contract claim</u> (Count One)…are preempted") (emphasis added).

The case law overwhelmingly reveals that when OUTSA preemption is raised as a defense, it is *not* applied to pending breach of contract claims.[31]  Courts correctly and routinely describe OUTSA's displacement clause as applying to "common law" claims.  *E.g.*, *Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc*., 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012); *e.g.*, *Glasstech, Inc. v. TGL Tempering Sys., Inc*., 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999); *e.g.*, *Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 919 (N.D. Ohio 2011).

Unlike the vast majority of litigants, the Defendants in this case *did* argue that OUTSA preempted breach of contract claims.  Neither the Defendants nor the district court identified a single case (state or federal) that dismissed a breach of

---

[31] *E.g.*, *Sal's Heating & Cooling, Inc. v. Bers Acquisition Co.*, 2022-Ohio-1756, ¶ 8, 192 N.E.3d 537, 541; *e.g.*, *Unique Paving Materials Corp. v. Fargnoli*, 361 Fed. Appx. 689, 690 (6th Cir. 2010); *e.g.*, *Shepard & Assocs. v. Lokring Tech., LLC*, 2022 U.S. Dist. LEXIS 117268, *31 (N.D. Ohio 2022); *e.g.*, *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702, 720-22, 728 (N.D. Ohio 2009); *e.g.*, *Office Depot, Inc. v. Impact Office Prods*., LLC, 821 F. Supp. 2d 912, 921; *e.g., Applied Predictive Techs., Inc. v. Marketdial, Inc*., 598 F. Supp. 3d 1264, 1282 (D. Utah 2022); *e.g.*, *MEMC Elec. Materials, Inc. v. Balakrishnan*, 2012 U.S. Dist. LEXIS 128877, *31-32 (S.D. Ohio 2012); *e.g., D.P. Dough Franchising, LLC v. Southworth*, 2017 U.S. Dist. LEXIS 157951, *43 (S.D. Ohio 2017); *Ecolab, Inc. v. Glanz*, 2023 U.S. Dist. LEXIS 52997, *12 (S.D. Ohio 2023); *e.g.*, *More Than Gourmet, Inc. v. Finnegan*, 2019 U.S. Dist. LEXIS 243261, *41-42 (N.D. Ohio 2019); *e.g.*, *Safelite Grp., Inc. v. Lockridge*, 2023 U.S. Dist. LEXIS 37423, *11 (S.D. Ohio 2023).

contract claim based upon OUTSA preemption.[32]  Of the few cases Defendants did cite, none held that OUTSA preempted a breach of contract claim.  *Rogers Indus. Prods. v. HF Rubber Mach. Inc*., 188 Ohio App. 3d 570, 581, 2010-Ohio-3388, ¶ 32 (9th Dist.) (did not involve a breach of contract claim); *Sal's Heating & Cooling, Inc. v. Bers Acquisition Co.*, 2022-Ohio-1756, ¶ 54, 192 N.E.3d 537, 548 (8th Dist.) (did involve a breach of contract claim, but only the civil conspiracy tort claim was preempted); *Stolle Mach. Co., LLC v. Ram Precision Indus*., 605 Fed. Appx. 473, 485 (6th Cir. 2015) (affirmed preemption of tortious interference claim only but did not involve a breach of contract claim).

As is evident from the plain text of O.R.C. 1333.67 and the numerous cases cited herein, OUTSA's displacement clause does not apply to breach of contract claims.

### (c)    Nationwide Consensus Exists:  UTSA Does Not Preempt Breach of Contract Claims.

In addition to Ohio, 34 other states have enacted a displacement clause either identical to or substantively similar to UTSA's displacement clause (collectively, the "***Displacement Clause***"), all of which expressly exempt from preemption

---

[32] Without citation, the district court ruled:  "On its face, it only exempts from preemption contractual remedies that differ from those available under the Ohio Uniform Trade Secrets Act."  (Opinion, RE 171, Page ID # 7256-57).

"contractual remedies, whether or not based upon misappropriation of a trade secret."[33]

The Seventh, Ninth, and Tenth Circuits agree that the Displacement Clause categorically does not apply to breach of contract claims. *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) (UTSA "abolishes claims <u>other than those based on contract</u> arising from misappropriated trade secrets…") (emphasis added); *Integral Dev. Corp. v. Tolat*, 675 Fed. Appx. 700, 704 (9th Cir. 2017) ("<u>[B]reach of contract claims</u>, even when they are based on misappropriation or misuse of a trade secret, <u>are not displaced by [C]UTSA</u>…Thus, the district court erroneously found Integral's breach of contract claim was preempted by CUTSA") (emphasis added, citations omitted); *Harvey Barnett, Inc. v. Shidler*, 200 Fed. Appx. 734, 740, fn. 6

---

[33] **Arizona** (A.R.S.§ 44-407); **California** (Cal. Civ. Code § 3426.7); **Colorado** (Colo Rev. Stat. § 7-74-108); **Delaware** (6 Del. C. § 2007); **Florida** (Fla. Stat. §§ 688.008); **Georgia (**Ga. Code. § 10-1-767); **Hawaii** (Haw. Rec. Stat. § 482B-8); **Idaho** (Idaho C. § 48-806); **Illinois** (765 Ill. Comp. Stat. § 1065/8); **Kansas** (Kan. Stat. § 60-3326); **Kentucky** (Ky. Rev. Stat. § 365.892); **Maine** (10 M.R.S. § 1548); **Maryland** (Md. Code., Com. Law. § 11-1207); **Michigan** (M.C.L. § 445.1908); **Minnesota** (Minn. Stat. § 325C.07); **Mississippi** (Miss. Code § 75-26-15); **Missouri** (Mo. Rev. Stat. § 417.463); **Montana** (Mont. Code § 30-14-408); **Nevada** (Nev. Rev. Stat. § 600A.090); **New Hampshire** (N.H. Rev. Stat. § 350-B:7); **North Dakota** (N.D. Cent. Code § 47-25.1-07); **Oklahoma** (Okla. Stat. titl. 78, § 92); **Oregon** (Or. Rev. Stat. § 646.473); **Pennsylvania** (12 Pa.C.S. § 5308); **Rhode Island** (R.I. Gen. Laws § 6-41-7); **South Carolina** (S.C. Code § 39-8-110); **South Dakota** (S.D. Codified Laws § 37-29-7); **Tennessee** (Tenn. Code § 47-25-1708); **Texas** (Tex. Civ. Prac. & Rem. Code § 134A.007); **Utah** (Utah Code § 13-24-8); **Vermont** (Vt. Stat. tit. 9, § 4607); **Virginia** (Va. Code § 59.1-341); **West Virginia** (W. Va. Code § 47-22-7); **Wisconsin** (Wis. Stat. § 134.90(6)).

19

(10th Cir. 2006) ("We note that even if ISR's cause of action for <u>breach of contract</u> was based on misappropriation of trade secrets, <u>it would not be superseded by ISR's misappropriation of trade secrets claim</u>…") (emphasis added).

Consensus exists in courts across this nation: the Displacement Clause does not apply to breach of contract claims.[34]

---

[34] *W. L. Gore & Assocs. v. GI Dynamics, Inc.*, 872 F. Supp. 2d 883, 895 (D. Ariz. 2012); *Official Imaging, Inc. v. Langridge*, 2018 U.S. Dist. LEXIS 226887, *23 (C.D. Cal., Aug. 7, 2018); *Angelica Textile Services, Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013); *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1002 (N.D. Cal. Aug. 24, 2015); *Atlas CPAs & Advisors PLLC v. Hayward & Assocs.*, 2021 Colo. Dist. LEXIS 1239, *17 (Dist. Col., Feb. 9, 2021); *Nutzz.com v. Vertrue Inc.*, 2005 Del. Ch. LEXIS 101, *22 (Del. Ch. 2005); *Sanirab Corp. v. Sunroc Corp.*, 2002 Del. Super. LEXIS 350, *13-14; *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M. D. Fla. 2005); *Office Depot, Inc. v. Impact Office Prods.*, LLC, 2011 U.S. Dist. LEXIS 117733, *52-53 (N.D. Ohio, Oct. 11, 2011); *Coihue v. Payanybiz*, 2018 U.S. Dist. LEXIS 235599, *14 (S.D. Fla. 2018); *Kleiman v. Wright*, 2020 U.S. Dist. LEXIS 171906, *104-105 (S. D. Fla. 2020); *Schwieterman v. Caterpillar Inc.*, 2021 U.S. Dist. LEXIS 135003, *17, 19 (N.D. Ga. 2021); *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1348 (N.D. Ga. 2007); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Haw. 314, 323, 235 P.3d 310, 319 (Haw. 2010); *New Phase Dev., LLC v. Cook*, 2015 U.S. Dist. LEXIS 98461, *2 (D. Idaho 2015); *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 271 (N.D. Ill. 2020); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001); *All W. Pet Supply Co. v. Hill's Pet Prods. Div.*, 847 F. Supp. 858, 861 (D. Kan. 1994); *T.D.I. Int'l, Inc. v. Golf Preservations, Inc.*, 2008 U.S. Dist. LEXIS 7427, *13 (E.D. Ky. 2008); *Babcock Power, Inc. v. Kapsalis*, 2017 U.S. Dist. LEXIS 47315, *53 (W.D. Ky. 2017); *Progress Eng'g, LLC v. Bennett*, 2022 U.S. Dist. LEXIS 200166, *17, fn. 4 (D. Maine 2022); *Airfacts, Inc. v. de Amezaga*, 502 F. Supp. 3d 1027, 1040, fn. 11 (D. Md. 2020); *Appalachian Railcar Servs. v. Boatright Enters.*, 602 F. Supp. 2d 829, 852 (W.D. Mich. 2008); *ImageTrend, Inc. v. Locality Media, Inc.*, 2022 U.S. Dist. LEXIS 211741, *15 (D. Minn. 2022); *PF3 Global, LLC v. Forterra Pipe & Precast, LLC*, 2019 U.S. Dist. LEXIS 241560, *18 (S.D. Miss. 2019); *LeGgett v. Bed*, 2020 U.S. Dist. LEXIS 267648, *17 (W.D. Mo. 2020); *LocalAdLink, Inc. v. AdzZoo, LLC*, 2009 U.S. Dist.

The district court rebuked the national consensus and erroneously ruled that OUTSA preempted Metron's breach of contract claims.

The Ohio Supreme Court has not expressly ruled that OUTSA does not preempt breach of contract claims.  However, nothing suggests the Ohio Supreme Court would go against the decisions of Ohio's appellate courts.  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) ("Where, as here, the Ohio Supreme Court has not spoken on an issue, we look to the decisions of its lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue.").

Here, the district court cast aside rulings from Ohio's appellate courts that OUTSA does not preempt breach of contract claims.  *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 2017-Ohio-4292, ¶ 34, 82 N.E.3d 1180, 1189 (8th Dist.); *Key Realty, Ltd. v. Hall*, 6th Dist. No. L-19-1237, 2021-Ohio-26, ¶ 26.

---

LEXIS 142286, *43 (D. Nev. 2009); *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 304, fn.2 (D. N.H. 2012); *Vention Med. Advanced Components, Inc. v. Pappas*, 2016 N.H. Super. LEXIS 13, *44 (2016); *Stonyfield Farm, Inc. v. Agro-Farma, Inc.*, 2009 U.S. Dist. LEXIS 94217, *28 (D. N.H. 2009); *Skylar Haley LP v. Meduri Farms, Inc.*, 2010 U.S. Dist. LEXIS 103333, *6 (D. Or. 2010); *Read & Lundy, Inc. v. Wash. Trust Co.*, 2002 R.I. Super. LEXIS 181; *CommonSpirit Health v. HealthTrust Purchasing Grp., L.P.*, 2022 U.S. Dist. LEXIS 81688, *21 (M.D. Tenn. 2022); *Windrock, Inc. v. Resonance Sys.*, 2022 U.S. Dist. LEXIS 11395, *10 (E.D. Tenn. 2022); *PSC Indus. v. Johnson*, 2021 U.S. Dist. LEXIS 81350, *13 (M.D. Tenn. 2021); *CAE Integrated, LLC v. Moov Techs. Inc.*, 2022 U.S. Dist. LEXIS 173598, *14 (W.D. Tex. 2022); *Aon Risk Servs. v. Liebenstein*, 289 Wis. 2d 127, 163, 710 N.W.2d 175, 192 (Wisc. App. 2006).

### (d)   The District Court's Interpretation of OUTSA Violated Ohio's Statutory Interpretation Standards.

The Ohio Supreme Court articulated the standard for interpreting Ohio statutes: "Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *McConnell v. Dudley*, 158 Ohio St. 3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 19. "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Id.* A court "cannot add words" when interpreting an Ohio statute. *Holmes v. Crawford Mach., Inc.*, 134 Ohio St. 3d 303, 2012-Ohio-5380, 982 N.E.2d 643, ¶ 1.

Yet that is exactly what the district court did. The district court inserted into O.R.C. § 1333.67(B)(1) the phrase "that differ from those available under the Ohio Uniform Trade Secrets Act" to modify the term "contractual remedies." (RE 171, Page ID # 7257). According to the district court, O.R.C. § 1333.67(B)(1) *should* read:

> Contractual remedies [**that differ from those available under the Ohio Uniform Trade Secrets Act**], whether or not based on misappropriation of a trade secret;[35]

The district court claimed it was trying to predict how the Ohio Supreme Court would interpret OUTSA—yet failed to follow the rule against "adding words" into

---

[35] O.R.C. § 1333.67 (the district court's inserted language is bolded).

a statute. *See Holmes,* 2012-Ohio-538, ¶ 1. If Ohio's General Assembly wished to differentiate the contract exemption in OUTSA's displacement clause from the identical exemption adopted by 34 other states, then the text of O.R.C. § 1333.67(B)(1) would reflect such intent. The General Assembly expressed the exact opposite.[36]

Because the district court erred in ruling that OUTSA preempted Metron's breach of contract claims, this Court should reverse the district court's order granting summary judgment in favor of Defendants.

### 3.    Genuine Issues of Fact Exist as to the Existence of a Trade Secret.

Under OUTSA, "trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[36] *See* O.R.C. § 1333.68 (OUTSA "shall be applied and construed to…make uniform the law with respect to their subject among states enacting them.").

23

O.R.C. § 1333.61(D).

Ordinarily, whether information qualifies as a trade secret is a question of fact. *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc*., 2006 U.S. Dist. LEXIS 394, \*29-31 (S.D. Ohio 2006); *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 948 (S.D. Ohio 2002). There is no specific subject matter criterion for a trade secret. *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc*., 2006 U.S. Dist. LEXIS 394, \*29-31 (S.D. Ohio 2006). "As long as the definitional elements are met, virtually any type of information can be a trade secret." *Id*., *citing Hoffman-La Roche Inc. v. Yoder,* 950 F. Supp.1348, 1357 (S.D. Ohio 1997).

Metron's Unpublished Application, and the 72 portions copied into the Cook-EnTox Application, derived independent economic value by *not* being known to others. Metron's Unpublished Application, in the hands of people like Mr. Adams, Mr. Thomas, and Ms. Cook, proved injurious to Metron. This Court need not speculate what negative impact Metron *could* have faced if Metron's information prematurely gets in the wrongs hands. This Court can simply look at what occurred.

The district court stated, "the testimony of Dr. Tsirikos-Karapanos shows that the process for creating a suspension appears to be well-known throughout the dietary supplement industry." (Opinion, RE 171, Page ID # 7265). The only supporting example the district court provided was Dr. Tsirikos-Karapanos's

testimony that "there are many products in Europe and…the United States." (*Id.*, *citing* RE 156-1, Page ID # 4959.).

It was error for the district court to use the mere existence of clinoptilolite suspension products in the marketplace to extrapolate that each of the 72 identified examples of misappropriations—and Metron's technical and scientific information in particular—were "widely known." Hundreds of companies make carbonated beverages, but it does not mean that Coca-Cola's technical and scientific information is "widely known." The same is true in the clinoptilolite space. Just because other companies sell "clinoptilolite suspension" products does not, by any stretch, mean that the industry "widely knows" Metron's specific practices, methods, and ingredients. *See Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 410-411 (6th Cir. 2006) (…A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.") (citations omitted); *accord Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2018 U.S. Dist. LEXIS 167813, *13 (W.D. Ky. 2018). Nothing in the record shows that all clinoptilolite products on the market are the result of the one monolithic, uniform, or "widely known" process.

Defendants copying Metron's Unpublished Application and then using those copied portions to obtain the Cook-EnTox Patent, in and of itself, disproves the

district court's conclusion.  If Metron's process was "widely known"—as the district court believed—then there should have been no reason for Ms. Cook (who claims to be a "scientist" in the field) to copy-and-paste from Metron's Unpublished Application.  Ms. Cook could have obtained the "widely known" information by legitimate means to create the Cook-EnTox Application instead of copy-and-pasting from Metron.  Ms. Cook's actions show, if not definitively prove, that Metron's Unpublished Application and the information it contained were trade secrets.  *See e.g., Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 2018 U.S. Dist. LEXIS 167813, *13 (W.D. Ky. 2018) ("Even if resorting to the patterns of the plaintiff was more of a convenience than a necessity, still, if there was a secret, it belonged to him, and the defendant had no right to obtain it by unfair means, or to use it after it was thus obtained..."); *see e.g.*, *Bonumose Biochem, LLC v. Yi-Heng Percival Zhang*, 2018 U.S. Dist. LEXIS 84491, *14 (W.D. Va. 2018) ("The Tianjin Institute application included the same enzymatic pathway for Tagatose production invented by Dr. Wichelecki and described in the unpublished provisional application" and "named the exact same two key enzymes and featured drawings that were nearly identical to those in the unpublished provisional application"); *e.g.*, *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 411 (6th Cir. 2006) ("…a mixture of secret information (e.g., dimensions, tolerances, and data-reference points) and non-secret information…" can constitute a trade secret).

26

The district court further stated, "Nor does the record show that the process described in the international patent application is particularly distinctive." (Opinion, RE 171, Page ID # 7266). The district court reached this conclusion despite acknowledging that it took Dr. Tsirikos-Karapanos five or six months to test and develop it. (*Id.*). Metron's Unpublished Application contained distinctive information or else Ms. Cook would not have needed to copy it.

Defendants and the district court did not, and could not, identify a single company that used any of the ingredients, measurements, or methods contained in the Metron Application. Nothing in the record shows what processes other companies use to make a "clinoptilolite suspension," which undoubtedly vary in quality and efficacy. Nothing in the record identifies a single person (aside from the misappropriators) who were aware of any of the specific qualitative and quantitative information contained in Metron's Unpublished Application.

The district court's ability to identify companies offering a "clinoptilolite suspension" product does not led to a reasonable inference that Metron's Unpublished Application contains no trade secrets. Any inference on this issue should have been drawn in Metron's favor, as the non-moving party, not against Metron. *See DeGidio v. West Group Corp.*, 355 F.3d 506, 509 (6th Cir. 2004), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Without any evidence or proof that any other company widely knows

the testing, methods, ingredients, or measurements contained in Metron's Unpublished Application, it is improper to rule, as a matter of law, that all 72 of the copied portion of Metron's Unpublished Application Metron's were not "particularly distinctive" and not trade secrets. This is especially true for a factual question that is typically and ordinarily reserved for the jury. *See Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc*., 2006 U.S. Dist. LEXIS 394, *29-31 (S.D. Ohio 2006); *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 948 (S.D. Ohio 2002).

When viewing the evidence in the light most favorable to Metron, it is evident that genuine issue of fact exist on the existence of a trade secret. Without Ms. Cook and Mr. Adams's access to and use of Metron's Unpublished Application, there would be no Cook-EnTox Application. Without the Cook-EnTox Application, there would be no Cook-EnTox Patent. And without the Cook-EnTox Patent, Ms. Cook and Mr. Thomas could not legally market Vitality Detox Drops or CleanSlate as "patent pending" or "patented" to Metron's detriment and their economic gain. Metron's expert, Dr. Alberdi, confirmed that the 72 distinct sections of the Metron PCT Application copied by the Cook-EnTox Application for the distinct purpose of filing, pursuing, and ultimately being awarded a patent. (Alberdi Report, RE 154-3, Page ID # 3497).

Because genuine issues of fact existed on Metron's OUTSA claim, which was supported by expert testimony, the district court erred when it granted summary judgment in favor of Defendants and dismissed Metron's OUTSA claim.

### 4. Metron's Misappropriation Claim is Not Time-Barred.

Defendants bear the burden of establishing a statute of limitations affirmative defense. *Reo v. Lindstedt*, 10th Dist. No. 2019-L-073, 2020-Ohio-6674, ¶ 80; *accord Smith v. J.J.B. Hilliard, W.L. Lyons, LLC*, 578 Fed. Appx. 556, 562-563 (6th Cir. 2014). Here, Defendants failed to establish that Metron had actual or constructive knowledge of the misappropriation that occurred on October 14, 2015 before July 13, 2016 (which is four years before Metron filed this suit on July 13, 2020).

### (a) Establishing Constructive Knowledge Involves a Two-Step Process.

Metron's trade secret misappropriation claims are subject to a four-year statute of limitations period. O.R.C. § 1333.66 provides:

> An action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered…

OUTSA incorporates Ohio's discovery rule: "we count time from when the trade secret's owner *could have* discovered the misappropriation, rather than when the wrong first occurred." *Adcor Indus. v. Bevcorp, LLC*, 252 Fed. Appx. 55, 60 (6th Cir. 2007), *citing O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d. 84, 4 Ohio B. 335, 447 N.E.2d 727, 730 (1983) (emphasis in original).

29

Knowledge can be "actual" or "constructive." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 181 (1984). "Constructive knowledge" is knowledge that a person *would have* acquired had s/he exercised ordinary diligence:

> If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry, and he fails to do so, **he is chargeable with knowledge which by ordinary diligence he would have acquired**.[37]

Establishing constructive knowledge, therefore, involves a two-step process.

*First*, a party must have knowledge of facts that would lead a fair and prudent person to "make further inquiry." *Adcor*, 252 Fed. Appx. at 60, *citing Hambleton*, *supra*.

*Second*, the record must show that upon exercising said ordinary diligence (*a.k.a.* "making further inquiry"), a party *would have* learned of the wrong. *Hambleton*, 12 Ohio St. 3d at 181 (finding constructive knowledge because "…the circumstances were such that the barest inquiry ***would have* led to actual knowledge of the claimed wrongdoing**") (emphasis added). If the party has information prompting "further inquiry," but fails to make an inquiry, "he is chargeable with knowledge which by ordinary diligence **he *would have* acquired**." *Barrio Bros., LLC v. Revolucion, LLC*, 2019 U.S. Dist. LEXIS 179092, *10 (N.D. Ohio 2019), *quoting Hambleton*, 12 Ohio St.3d at 181) (emphasis added).

---

[37] *Id*. (emphasis added).

Suspicion is not the same as knowledge.  *See Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.,* 15 F.3d 1427, 1430 (7th Cir. 1994) (holding, under Wisconsin's trade secrets act, that "concerns and suspicions rather than *knowledge*" of trade-secrets misuse "do not start the clock of the statute of limitations"); *accord Knights Armament Co. v. Optical Sys. Tech., Inc*., 654 F.3d 1179, 1185 (11th Cir. 2011) (suspicion and concerns alone are insufficient to start the running of the statute of limitations).

> **(b)     Metron Filed this Action Within Four Years of Having Actual or Constructive Knowledge of the Defendants' Misappropriation.**

Metron filed this action on July 13, 2020.  For Metron's OUTSA claims to be time-barred, Defendants had to establish that Metron had actual or constructive knowledge of the misappropriation before July 13, 2016 (four years earlier). Defendants failed this burden.  The October 14, 2015 Meeting when Defendants verbatim copied 72 portions of Metron's Unpublished Application was revealed to Metron through discovery *in this case*.  The Cook-EnTox Application, which reveals the verbatim copying, was not published until April 2017 (well within the four-year window Metron had to file an OUTSA claim).

Nothing in the record suggests that Metron had "actual" knowledge of this October 14, 2015 Meeting before July 13, 2016.  Nothing in the record suggests that

31

Metron had "actual" knowledge of the Cook-EnTox Application before July 13, 2016 or at any time before the Cook-EnTox Application published in April 2017.

Not only did Metron lack actual knowledge, Metron's business partner at the time, Mr. Adams, concealed the misappropriation. Mr. Adams chose not to tell Metron about the Meeting, EnTox, the Cook-EnTox Application, or his dealings with Mr. Thomas and Ms. Cook because, to use his words, "…I don't have to impart that information." (Adams Dep., RE 155-2, Page ID # 4332). Mr. Adams provided the following analogy to explain his thought-process:

> Imagine you have a business partner and let's say you used to date your business partner's wife before they got married[.] [A]nd you look at your business partner and you say, listen, ["]I will never flirt with your wife again and you can count on it.["] You make that representation. But you…look at her butt every time you see her and you think about her….why are you not disclosing that to your partner? Because, one, maybe it's none of his business, and two, **it's not consistent with the representation you made**.[38]

Metron is the "business partner" in this analogy. And Mr. Adams working with Ms. Cook and Mr. Thomas to copy Metron's Unpublished Application was the secret Mr. Adams withheld from Metron. Creating and filing the Cook-EnTox Application, while subject to an MCA with Metron, was undeniably inconsistent with Mr. Adams's promise to be "honest and transparent." (*See* Adams Dep., RE 164-1, Page ID # 6875-82; RE 155-2, Page ID # 4328). Mr. Adams took it a step

---

[38] Adams Dep., RE 155-2, Page ID # 4329-30 (emphasis added) (verbal idiosyncrasies omitted).

32

further and assured Metron, "We have common enemies… Clayton [Thomas], Christina [Cook]…" (Adams Dep., RE 164-1, Page ID # 6875-82).

Metron also lacked constructive knowledge.  Absent from the record is evidence that *any* investigation would have revealed to Metron (before July 13, 2016) the Meeting or the Cook-EnTox Application.  Nothing suggests that Mr. Adams, Mr. Thomas, or Ms. Cook had any intention of telling Metron about the Meeting or the Cook-EnTox Application.  Even if Metron was maniacally combing through patent databases on a daily basis, Metron could not have discovered the Cook-EnTox Application until it was published in April 2017.

### (c)    The District Court Failed to Apply Part Two of the Two-Part Test for Constructive Knowledge.

The district court addressed only the *first* part of the constructive knowledge test: whether Metron had knowledge of facts that would have led a fair and prudent company to "make further inquiry."  (RE 171, Page ID # 7261).  But the district court failed to consider the *second* part of the constructive knowledge test:  what Metron *would have learned* from said "further inquiry."  *See Hambleton*, 12 Ohio St. 3d at 181.

For Metron to have "constructive knowledge" of the misappropriation that occurred on October 14, 2015, Defendants were required—at the very least—to establish that Metron *could* have discovered the misappropriation some time before July 13, 2016.  *See* O.R.C. § 1333.66; *Adcor Indus. v. Bevcorp, LLC*, 252 Fed. Appx.

33

55, 60 (6th Cir. 2007) (the time to file a misappropriation claim begins to run when the trade secret owner "*could have*" discovered the misappropriation, not when the wrong first occurred). Defendants failed to establish factually, let alone as a matter of law, that Metron "could have" discovered the October 14th misappropriation before July 13, 2016.

April 20, 2017—when the Cook-EnTox Application published—is the earliest possible date Metron arguably "could have" learned that Defendants verbatim copied from Metron's Unpublished Application. Some courts have concluded that even a patent application's publication does not necessarily trigger the statute of limitations period. *See Abaco Drilling Techs. v. Pv Fluid Prods.*, 2020 U.S. Dist. LEXIS 259199, *6-7 (W.D. Tex. 2020), *compiling cases* ("Courts… throughout the country, have reached different conclusions as to whether published patent applications confer constructive notice of their existence for 'reasonable diligence' purposes"). This Court need not address that issue because Metron asserted its OUTSA claims within four years of the Cook-EnTox Application's publication.

### (d)    Metron's Prior Lawsuit Against Clayton Thomas Does Not Establish Actual or Constructive Notice.

On February 22, 2016, Metron filed suit against Clayton Thomas and his company Personalized Health Solutions, LLC in state court, Case No. CV-16-859345 ("***Metron v. Thomas***"). Metron sought temporary and permanent injunctive relief along with compensatory and punitive damages. (Complaint, RE 162-3, Page

34

ID # 6722-6725).  *Metron v. Thomas* did not advance to discovery because Metron prevailed on default.  Metron's Complaint in *Metron v. Thomas* did include an OUTSA claim against Clayton Thomas, but it was not based upon the Cook-EnTox Application or the October 14th Meeting—about which Metron did not know and could not have known.  The Cook-EnTox Application published in April 2017—more than a year after Metron filed *Metron v. Thomas*.

Metron's Complaint in *Metron v. Thomas*, and the fact it contained an OUTSA claim, was the district court's sole basis for finding Metron had "actual" and/or "constructive" knowledge of the misappropriation that occurred on October 14, 2015.  (Opinion, RE 171, Page ID # 7241).  The district court drew unsupported inferences about what Metron "knew" based upon mischaracterizations of the allegations in *Metron v. Thomas*.  The district court wrote, "Plaintiff alleged that Mr. Thomas and his company unfairly competed *through "knock-off" patents*, other zeolite products, and re-labeling and selling one of its products as Vitality Detox Drops." (Opinion, RE 171, Page ID # 7241, *citing* Complaint, RE 157-5, Page ID # 6170-73, ¶¶ 31-44) (emphasis added).

The *Metron v. Thomas* Complaint did not allege that Mr. Thomas created a "knock-off" patent as the district court implies.  (*See* Complaint, RE 157-5, ¶¶ 31-44).  Metron alleged:

> On September 5, 2015, Thomas contacted a Metron investor, Larry Hopfenspirger, and sought his backing and support to "knock-off" Metron's patent...[39]

From this allegation, the district court drew the inference that Metron knew and/or should have known about the Cook-EnTox Application when Metron filed *Metron v. Thomas.* The district court drew this inference even though the Cook-EnTox Application had not been published when Metron filed *Metron v. Thomas.* Further, the Cook-EnTox patent does not even identify Mr. Thomas as the inventor or assignee. Nothing in the record in this case or the record in *Metron v. Thomas* suggests that Metron knew (actually or constructively) about the Cook-EnTox Application before it published in April 2017.

Yet the district court used the OUTSA claim in *Metron v. Thomas* to infer and conclude that Metron "either knew of Mr. Thomas's alleged misappropriation or had grounds to investigate before July 2016." (Opinion, RE 171, Page ID # 7261). The district court reached this conclusion despite acknowledging that *Metron v. Thomas* was resolved via default judgment, had no discovery, and none of the state court's injunctions mentioned patent applications. (*Id.*, Page ID # 7241). The Complaint in *Metron v. Thomas* did not mention the Meeting, Mark Adams, Top Partners, EnTox, or the Cook-EnTox Application. The reason is clear: Metron did not know and

---

[39] RE 157-5, Page ID # 6173, ¶ 43.

could not have known about the Meeting or the Cook-EnTox Application when it filed *Metron v. Thomas*.

Compounding its error, the district court expanded Metron's purported "knowledge" to include Ms. Cook—who Metron did not sue in *Metron v. Thomas*. The district court concluded that Metron "knew of the close relationship between her and Mr. Thomas and that she was interested in selling detoxification products." (RE 171, Page ID # 7261). The district court implies that Metron should have sued Ms. Cook in *Metron v. Thomas* because she was (1) Mr. Thomas's girlfriend and (2) generally had interest in detox products. (*See* Opinion, RE 171, Page ID # 7263) (holding, "Plaintiff's failure to vindicate its rights when it had the chance bars its claims against Ms. Cook and Mr. Thomas as untimely"). The district court accused Metron of being "litigious" but then chastised Metron for not being litigious enough. (*See id.*).

By comparison, the district court in *Spectralytics, Inc. v. Cordis Corp.*, 576 F. Supp. 2d 1030, 1059-1060 (D. Minn. 2008) rejected the very reasoning the district court employed here. In *Spectralytics*, the defendant moved for summary judgment arguing the plaintiff's OUTSA claims were time-barred. *Id.* at 1058. The defendant argued the plaintiff had actual or constructive knowledge of the misappropriation based upon the plaintiff's previous complaint against the defendant. The district court held:

…[Defendant] Noble's argument rests on the dubious proposition that the 'knowledge' that permits a party to bring a trade-secrets claim without being sanctioned under Rule 11 of the Federal Rules of Civil Procedure is the same as the 'knowledge' that triggers the running of the statute of limitations on that claim. Noble cites no authority supporting this proposition, and it would be surprising if this proposition were true, given that many claims pass muster under Rule 11 are dismissed after discovery reveals them to be factually unsupported.[40]

Here, the district court adopted the same "dubious proposition" rejected in *Spectralytics.* (RE 171, Page ID # 7260-61) (holding, "By previously pursuing the same theories in state court, Metron Nutraceuticals affirmed that it possessed good grounds for its claims in February 2016"). Like the defendant in *Spectralytics*, the district court and the Defendants failed to cite any authority to support the proposition that 'good cause' under Ohio Civ. R. 11 satisfies the knowledge requirement under O.R.C. § 1333.66. Ohio permits plaintiffs to file alternative causes of action. *Dick v. Hyer*, 94 Ohio St. 351, 354, 114 N.E. 251, 252 (1916). Even assuming Metron had "good cause" under Ohio Civ. R. 11 to include an OUTSA claim against Mr. Thomas in *Metron v. Thomas*, such claim was not based upon the Cook-EnTox Application, which was unknown to and undiscoverable by Metron. Nothing in the record proves otherwise.

---

[40] *Id*. at 1059.

(e)    **Issues of Fact Exist**.

Whether Metron exercised reasonable diligence is a question of fact. *See e.g., Abaco Drilling Techs. v. Pv Fluid Prods.*, 2020 U.S. Dist. LEXIS 259199, *6-7 (W.D. Tex. 2020). Here, the district court incorrectly concluded that Metron "failed to timely investigate its concerns giving rise to this lawsuit, and no jury could find otherwise." (Opinion, RE 171, Page ID # 7261). Metron disagrees. In front of a jury, it is highly implausible that Defendants could satisfy their burden on their statute of limitations affirmative defense based solely upon Metron's use of the verb "knock off" in the *Metron v. Thomas* Complaint. At the very least, whether Metron exercised reasonable diligence and whether that reasonable diligence would have resulted in Metron learning about the Cook-EnTox Application were questions of fact that the jury, and not the district court, should have resolved.

As such, the district court erred when it granted Defendants' Motion for Summary Judgment on the grounds that Metron's OUTSA claims against Mr. Thomas and Ms. Cook were time-barred.

**B.    <u>The District Court Demonstrated Hostility Toward Metron</u>.**

In multiple orders, the district court unjustifiably attacked Metron and Metron's counsel:

- The court "remains deeply troubled by the conduct of…Metron Nutraceuticals and its counsel."[41]

---

[41] RE 146, Page ID # 3467.

- "[T]he record demonstrates [Metron's] willingness to use and abuse the legal system."[42]

- Metron is "litigious."[43]

- "Plaintiff's counsel has abandoned reason and a constructive approach to resolving any good-faith disputes over the merits in favor of litigation tactics that claw and scrape for an advantage, regardless of the cost."[44]

- "…this case involves a seemingly endless parade of motions for contempt, sanctions, and discovery disputes;" "…it is not acceptable in a federal court."[45]

These gratuitous attacks reveal the district court's hostility toward Metron and its counsel. Examining the "examples" the district court cited to support these accusations reveals just how baseless the district court's opinions are.

The district court wrote, "[T]he record demonstrates [Metron's] willingness to use and abuse the legal system." (*Id.*, Page ID # 2763, *citing* RE 99, 101, 141, 155-2, 157-5 ¶¶ 1-107). As "examples" of this purported "abuse," the district court cited two lawsuits Metron filed in state court in 2016: *Metron v. Thomas* (previously discussed) and a breach of contract case against SOZO Global (Metron's former distributor) and Mark Adams ("***Metron v. SOZO***"). (*Id.*). The district court cited just two pages of Mark Adams's deposition where Mr. Adams (from his viewpoint)

---

[42] RE 171, Page ID # 2763, citing RE 99, 101, 141, 155-2, 157-5 ¶¶ 1-107.

[43] RE 171, Page ID # 2763

[44] RE 146, Page ID # 3459-60.

[45] RE 146, Page ID # 3455.

briefly and vaguely discussed *Metron v. SOZO*.  (RE 157-5, Page ID # 4366-67). Even in the limited testimony, Mr. Adams admitted paying Metron the money he owed from a prior business dealing as a result of Metron filing suit.  (RE 157-5, Page ID # 4366-67).

The district court also identified *Metron v. Thomas* as an example of Metron "abusing the legal system."   (RE 171, Page ID # 2763, *citing* RE 157-5, ¶¶ 1-107). Metron prevailed in *Metron v. Thomas.*  The state court ordered Mr. Thomas to serve three days in jail, granted Metron injunctive relief, granted default judgment, and awarded Metron more than $250,000,[46] which was affirmed on appeal.  *See Metron Nutraceuticals, LLC v. Thomas*, 8th Dist. Cuy. No. 110280, 2022-Ohio-79, ¶¶ 8, 12. Despite prevailing in these lawsuits, the district court cited them as examples of Metron abusing the legal system.  (RE 171, Page ID # 2763).

As another "example" of Metron abusing the legal system, the district court cited Metron's Motion for Civil Contempt and Sanctions against Clayton Thomas. (RE 171, Page ID # 2763).  This motion was based upon Mr. Thomas violating the district court's order requiring Mr. Thomas to either obtain counsel or answer Metron's discovery by a certain date.  (Metron's Motion for Sanctions, RE 99, Page ID # 2865).  The district court granted this motion, in part, and awarded Metron Rule

---

[46] The monetary award was based upon Mr. Thomas absconding with more than 2,000 bottles of Metron's product.

37 sanctions. (Order, RE 111, Page ID # 3222-24). Indeed, Mr. Thomas reimbursed Metron for attorneys' fees incurred in preparing this motion. Nothing was even *arguably* frivolous about Metron's Motion, and it was granted. The district court even acknowledged, "Clayton Thomas failed to comply with the Court's discovery order of May 11, 2021 and has not provided substantial justification." (*Id.*, Page ID # 3223).

Another "example" of Metron abusing the legal system, according to the district court, was Metron's Motion to Disqualify Kline Preston as ROOT's trial counsel. (RE 171, Page ID # 2763). In that motion, Metron argued that Mr. Preston was likely a necessary witness because his law office shared a principal place of business with several defendants and Mr. Preston was part of ROOT's management team. (Motion to Disqualify, RE 101, Page ID # 2984). Metron argued that Mr. Preston's role as ROOT's counsel would likely violate the advocate/witness rule. (*Id.*, Page ID # 2982-32). The district court denied Metron's Motion to Disqualify, but stated, "...disqualification may be appropriate or necessary at a later date depending on how the case and evidence evolve in discovery." (Motion to Disqualify, RE 111, Page ID # 3225). Although the district court denied the motion at that time, it acknowledged such disqualification may be appropriate or "necessary" down the road; yet the district court somehow cited this motion as an "example" of Metron abusing the legal system. (Opinion, RE 171, Page ID # 2763).

42

The district court also cited Metron's second Motion for Sanctions against Clayton Thomas as an "example" of Metron abusing the legal system. (Order, RE 146, Page ID # 3455-68, denying Motion for Sanctions, RE 141, Page ID # 3411-20). Metron had previously requested, on April 15, 2021, a preliminary injunction against Mr. Thomas because, *inter alia*, Mr. Thomas publicly and on the internet accused Dr. Tsirikos-Karapanos of being a "child molester" and "wife abuser." (Motion for Preliminary Injunction, RE 85, Page ID # 2729). The district court enjoined Mr. Thomas from "making any statements…that in any way disparage, reference, allude to, or pertain to" Metron or its members. (Order, RE 89, Page ID # 2816). While this order was still in effect, Mr. Thomas publicly and on the internet called Dr. Tsirikos-Karapanos and Metron's counsel "pedophiles," "a little bit gay," and "just really bad people." (Motion for Sanctions, RE 141, Page ID # 3411-12, 3420). Based upon what Metron viewed as a clear violation of the district court's clear order, Metron filed a Motion for Sanctions against Mr. Thomas. (*Id.*). The Motion was also based upon Mr. Thomas's continued possession and unredacted disclosure of Metron's tax documents containing the social security numbers of Dr. Tsirikos-Karapanos and his minor daughters—which he previously represented to the district court that he no longer possessed. (*Id.*, Page ID # 3406-07, *citing* RE 86-1, Page ID # 2803).

In its order denying Metron's Motion for Sanctions, the district court voiced vehement disapproval of Metron's efforts to enforce the district court's own orders: "…this case involves a seemingly endless parade of motions for contempt, sanctions, and discovery disputes;" "…it is not acceptable in a federal court." (RE 146, Page ID # 3455). Despite acknowledging that Mr. Thomas's statement "does violate the letter of the Court's Order";[47] that Mr. Thomas's comments "appear defamatory and might even be defamatory per se," and that "Plaintiff has understandable concerns about protecting against the disclosure of social security numbers…," the district court expressed hostility toward Metron and its counsel, writing: "Like their client, however, Plaintiff's counsel has abandoned reason and a constructive approach to resolving any good-faith disputes over the merits in favor of litigation tactics that claw and scrape for an advantage, regardless of the cost." (Order, RE 146, Page ID # 3459-60). *Sua sponte*, the district court determined that its previous order, upon which Metron's second Motion for Sanctions was based, "goes too far." (*Id.*, Page ID # 3459). The district court concluded its opinion with a final jab at Metron: "The Court remains deeply troubled by the conduct of Mr. Thomas and of Metron Nutraceuticals and its counsel." (*Id.*, Page ID # 3467). Therefore, the district court attacked Plaintiff's counsel for protecting itself from actions and language of Mr. Thomas that the district court admitted violated the district court's own order.

---

[47] RE 146, Page ID # 3459.

The next and only other motion Metron filed occurred six months later when Metron opposed Defendants' Motion for Summary Judgment. (RE 168). The district court's ire toward Metron and its counsel apparently had not worn off during this six month period—because the district court, in its order granting summary judgment, called Metron "litigious" and accused Metron of abusing the legal system. (Opinion, RE 171, Page ID # 7263).

"Although there is no mechanical test for determining when bias and/or hostility exists, when a trial judge exhibits…open hostility and bias…it follows that the judgment entered therein must be reversed." *Johnson v. Howard*, 24 Fed. Appx. 480, 489 (6th Cir. 2001), *quoting Anderson v. Sheppard,* 856 F.2d 741, 747 (6th Cir. 1988). "Because of the fundamental need for judicial neutrality, we hold that the harmless error doctrine is inapplicable in cases where judicial bias and/or hostility is found to have been exhibited at any stage of a judicial proceeding." *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988). Judicial misconduct may be established when "the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case..." *United States v. Smith*, 706 Fed. Appx. 241, 253-254 (6th Cir. 2017).

Here, the district court displayed its emotionally charged hostility toward Metron in its order denying Metron's Motion for Sanctions (Order, RE 146, Page ID # 3459-60) and then "doubled-down" in its order granting summary judgment.

45

(Opinion, RE 171, Page ID # 2763). Even in the district court's denials of some of the above discussed motions, the district court at least, in part, acknowledged Metron was correct. The district court ultimately disagreed and denied a few motions, but believing that Metron "abuse[s] the legal system" and openly attacking Metron and its counsel for filing and prevailing in other lawsuits demonstrated the district court's hostility toward Metron. The district court never ordered a show cause hearing against Metron or alleged Metron violated Rule 11. No basis existed to do so. Metron satisfied all court orders. No party filed a motion to compel against Metron. No party moved to strike any of Metron's pleadings, motions, or briefs. Metron presented expert witnesses and testimony fully supporting its claims, more than sufficient to create an issue of fact.

Ultimately, this Court should reverse the district court's order granting summary judgment based upon the district court's misinterpretation and misapplication of the law. Given the district court's aggressive and emotionally charged attacks against Metron and its counsel, Metron views the district court's dismissal as a veiled sanction against Metron motivated by hostility and based upon baseless accusations, to which Metron had no reasonable opportunity to respond. *PT Pukuafu Indah v. United States SEC*, 661 F.3d 914, 926 (6th Cir. 2011), *citing* Fed. R. Civ. P. 11(c)(1) (a district court may not impose a sanction until the violator has had "notice and a reasonable opportunity to respond").

# CONCLUSION

The district court erred in granting summary judgment and dismissing Metron's breach of contract and OUTSA claims as a matter of law.  OUTSA does not preempt breach of contract claims.  Genuine issues of fact existed as to Metron's OUTSA claims.  And Metron's OUTSA claims are not time-barred.  Accordingly, this Court should reverse the district court's Opinion and Order dated July 18, 2023 to dissuade other litigants from citing the district court's unprecedented, unsupported, and incorrect conclusions.

Respectfully submitted,

*/s/ Daniel A. Leister*

Daniel A. Leister (0089612)
Lewis Brisbois Bisgaard & Smith
1375 East 9th St., Suite 2250
Cleveland, Ohio
(216) 586-8803
Dan.Leister@lewisbrisbois.com
*Counsel for Plaintiff-Appellant*
*Metron Nutraceuticals, LLC*

47

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit requirements of Fed. R. App. P. 32(a)(7)(B)(i) because it contains **10,705 words**, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document had been prepared in a proportionally spaced typeface using **14-point, Times New Roman**.

<div style="margin-left:50%">

*/s/ Daniel A. Leister*
Daniel A. Leister (0089612)
Lewis Brisbois Bisgaard & Smith
1375 East 9th St., Suite 2250
Cleveland, Ohio
(216) 586-8803
Dan.Leister@lewisbrisbois.com
*Counsel for Metron Nutraceuticals*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I caused the foregoing Appellant's Brief to be filed and served through the Court's CM/ECF system. All counsel of record are registered CM/ECF users.

*/s/ Daniel A. Leister*

Daniel A. Leister (0089612)
Lewis Brisbois Bisgaard & Smith
1375 East 9th St., Suite 2250
Cleveland, Ohio
(216) 586-8803
Dan.Leister@lewisbrisbois.com
*Counsel for Metron Nutraceuticals*

# ADDENDUM

| Doc. | Page Range | Description |
|---|---|---|
| **COURT FILINGS AND ORDERS** | | |
| 1-1 | Page ID # 11-59 | Original Complaint (state court) |
| 1 | Page ID # 1-5 | Notice of Removal |
| 3 | Page ID # 92-165 | **Amended Complaint** (federal court) |
| 85 | Page ID # 2725-2734 | Metron's Motion for Preliminary Injunction against C. Thomas |
| 89 | Page ID # 2815-2816 | Order granting, in part, Metron's Motion for Preliminary Injunction |
| 96 | Page ID # 2829-2854 | Metron's Notice regarding Intellectual Property at Issue |
| 99 | Page ID # 2865-2872 | Metron's Motion for Civil Contempt and Sanctions against C. Thomas |
| 101 | Page ID # 2979-2986 | Metron's Motion to Disqualify |
| 107 | Page ID # 3054-3063 | Reply in Support of Metron's Motion to Disqualify |
| 108 | Page ID # 3181-3184 | Reply in Support of Motion for Civil Contempt and Sanctions against C. Thomas |
| 111 | Page ID # 3220-3226 | Opinion and Order re Metron's Motion for Sanctions against C. Thomas and Motion to Disqualify |
| 141 | Page ID # 3404-3436 | Metron's Motion for Civil Contempt and Renewed Motion for Preliminary Injunction |
| 144 | Page ID # 3447-3451 | Reply in Support of Metron's Motion for Civil Contempt and Renewed Motion for Preliminary Injunction |
| 146 | Page ID # 3455-3468 | Opinion and Order denying Metron's Motion for Sanctions against C. Thomas |
| 159 | Page ID # 6428-30 | Defendants' Motion for Summary Judgment |
| 159-1 | Page ID # 6431-6498 | Brief in Support of Defendants' Motion for Summary Judgment |
| 168 | Page ID # 7113-7181 | Metron's Opposition to Motion for Summary Judgment |
| 171 | Page ID # 7218-7270 | **Opinion and Order** granting Motion for Summary Judgment |
| 172 | Page ID # 7271 | **Judgment Entry** dismissing case |
| 173 | Page ID # 7272-73 | **Notice of Appeal** |
| **DEPOSITIONS** | | |
| 155-1 | Page ID # 3982-4084 | Deposition of Fernando Alberdi |
| 155-2 | Page ID # 4117-4466 | Deposition of Mark Adams |

| 155-3 | Page ID # 4467-4837 | Deposition of Clayton Thomas |
|---|---|---|
| 156-1 | Page ID # 4841-5300 | Deposition of Dr. Tsirikos-Karapanos |
| 156-2 | Page ID # 5420-5835 | Deposition of Christina Rahm Cook |
| 160-1 | Page ID # 6501-6573 | Deposition of Larry Williams |
| **MISC. DOCUMENTS** | | |
| 3-1 | Page ID # 166-168 | Mutual Confidentiality Agreement – Christina Cook |
| 3-2 | Page ID # 169-171 | Mutual Confidentiality Agreement – Clayton Thomas |
| 3-3 | Page ID # 172-174 | Mutual Confidentiality Agreement – Mark Adams |
| 156-1 | Page ID # 5373-5394 | Metron's PCT Application , December 31, 2014 |
| 156-2 | Page ID # 5836-5893 | Cook-EnTox Application, Redlined |
| 155-2 | Page ID # 4455-4466 | EnTox Patent |
| 157-5 | Page ID # 6163-6237 | Complaint in *Metron v. C. Thomas* (state court) |
| 166-1 | Page ID # 7065-7100 | Affidavit of Denise Stephens |
| 165-2 | Page ID # 7062-7064 | Affidavit of Dr. Tsirikos-Karapanos |
| 154-3 | Page ID # 3496-3510 | Dr. Alberdi Report |

51